CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS
RAILWAY COMPANY v. SUMMITVILLE
DRAIN TILE COMPANY.

[No. 12,157.   Filed March 30, 1926.   Rehearing denied June 22,
1926.]

1. CONSTITUTIONAL LAW.—*Courts have no authority to fix
freight rates.*—The courts have no authority to fix freight rates,
but may determine only what rates a carrier may exact under
the law and approved tariffs.   p. 53.

2. CARRIERS.—*Statute prohibiting higher freight rate for shorter
haul over same line held inapplicable where destination of ship-
ment was on another line at a greater distance.*—Section 12828
Burns 1926, cl. c, §5544 Burns 1914, makes it unlawful for a
carrier to charge or receive any greater compensation in the
aggregate for the transportation of freight "for a shorter than
for a longer distance over the same line in the same direction,
the shorter distance being included in the longer," but this part
of the statute is not applicable where the destination of the
shipment is on another line and the distance to the point of
delivery is greater than the distance between the initial and
farthest point on the original line.   p. 54.

From Madison Superior Court; *Willis S. Ellis*, Judge.

Action by the Summitville Drain Tile Company
against the Cleveland, Cincinnati, Chicago and St. Louis
Railway Company.   From a judgment for plaintiff, the
defendant appeals.   *Reversed.*   By the court in banc.

*Frank L. Littleton, Arthur A. Beckman* and *Forrest
Chenoweth,* for appellant.

*Clarence D. Rotruck* and *Arthur C. Call,* for appellee.

McMAHAN, J.—Complaint by appellee in four para-
graphs to recover alleged excessive freight charges on
certain shipments of drain tile from Summitville, Indi-
ana, to Laura, Atlanta, Greenfield and Wilson, Indiana.
Each shipment was made over appellant's line of rail-
road and a connecting carrier.

VOL. 85—4

Appellant challenges the action of the court in overruling its motion to separate the causes of action in certain paragraphs of the complaint and in overruling its demurrer to each paragraph of complaint. Since the court found the facts specially, and the decisive questions arise upon the exceptions to the conclusions of law, no consideration need be given the other questions.

In May, 1920, appellee delivered one carload of tile to appellant for shipment from Summitville to Laura. This car was routed by appellant over its line to Indianapolis, and from Indianapolis over a connecting carrier known as "the Monon" to Laura. The distance from Summitville to Indianapolis over appellant's line is fifty-four miles, and the distance from Indianapolis to Laura is 111 miles. Appellant charged appellee fourteen cents per 100 pounds for this shipment, the total, including war tax, being $63.74. Appellee claims that the legal rate for this shipment was nine cents per 100 pounds. The court found that if the freight had been assessed on the nine cents basis, the total amount appellee should have paid would have been $40.97. The rate for a like shipment from Summitville over the same route to Kersey, a station on the Monon eight miles beyond Laura, was nine cents.

As to this shipment, the court concluded as a matter of law that the charges were excessive in the sum of $22.10, and that appellee was entitled to judgment for that amount, plus $5 interest.

Appellee shipped one carload of tile to Wilson. This car was carried over appellant's road from Summitville through Indianapolis to Greencastle, a distance of eighty-seven miles, and from Greencastle over the Monon to Wilson, a total distance of 215 miles. Appellee paid for this shipment $52.27, on the basis of fourteen and one-half cents per 100 pounds. Appel-

lant's tariff or rate book did not name a specific rate on shipments to Wilson. Item 3 of the tariff provides that: "On traffic which moves wholly within the State of Indiana, and is not required to pass out to reach final destination, agents are strictly prohibited from quoting or using a higher rate for a shorter than a longer distance over the same line in the same direction, the shorter distance being entirely included within the longer distance." The next station on the Monon beyond Wilson, for which a rate was named, was Louisville, Kentucky, where the rate given was ten and one-half cents. If the freight on this car had been charged on the basis of the rate to Louisville, the total charges would have been $37.04. As to this shipment, the court concluded that the amount charged was excessive in the sum of $14.08, and that appellee should recover that sum plus $2.88, interest.

In July and September, 1920, appellee shipped three carloads of tile from Summitville to Atlanta. Appellant transported these cars over its line to Alexandria, a distance of five miles, and there delivered them to the Lake Erie and Western Railroad, a connecting carrier, which carrier transported them from Alexandria to Atlanta. On these three cars, appellee paid freight at the rate of nine cents per 100 pounds, which, with war tax, amounted to $92.81. At the times these shipments were made, the rate named in the tariff for shipments from Summitville to Atlanta was nine cents per 100 pounds. This rate was increased to ten cents in the tariff which became effective October 5, 1920, and subsequent thereto, appellee shipped two cars to Atlanta over the same route and was charged and paid freight therefor at the rate of ten cents, the total amount paid on these two cars, including war tax, was $82.07. Atlanta was an intermediate station on the Lake Erie and Western between Alexandria and Indianapolis. The

rate on tile from Summitville to Indianapolis prior to October 5, as shown in the rate book, was six and one-half cents. After that date, it was seven cents. Appellant's railroad ran from Summitville through Alexandria and Anderson to Indianapolis, a distance of fifty-four miles. Appellant's road, in connection with the Lake Erie and Western, also forms a continuous line from Summitville, through Alexandria, Tipton, and Atlanta to Indianapolis, the distance being sixty-two miles. The court found that if the rate of freight on the first three cars had been assessed on the basis of six and one-half cents and on the last two on the seven cents basis, the total, including war tax, would have been $123.37. As to these shipments to Atlanta, the court concluded as a matter of law that the rate to Indianapolis as shown in the rate book controlled and that the amount paid was excessive in the sum of $49.25, and that appellee was entitled to recover that amount, plus $10 interest.

The court also found that between April 13, 1920, and September 8, 1920, appellee delivered to appellant at Summitville eighteen carloads of tile for shipment to Greenfield. That appellant transported these cars over its railroad to Anderson, a distance of seventeen miles, and there delivered them to the Pennsylvania railroad, a connecting carrier. That the latter transported these cars over its line running through Richmond to Indianapolis. That for each of these shipments, the freight was paid to appellant at Summitville at the rate of eight cents per 100 pounds, with the exception of one car on which the rate paid was ten and one-half cents. When the cars on which appellee had paid the eight cents rate reached Greenfield, the consignee was required to and did pay an additional two and one-half cents per 100 pounds, which was charged back to and paid by appellee. The rate from Summit-

ville to Greenfield, as set out in appellant's schedule of rates, was ten and one-half cents per 100 pounds. The court found the total amount paid by appellee on these shipments was $194.34 more than it would have been if the freight had been based on the six and one-half cents rate to Indianapolis and, since Greenfield was an intermediate point between Summitville and Indianapolis, via Richmond, concluded as a matter of law that appellee should recover on account of these shipments $194.34, plus $40.80 interest.

Appellant contends that the court erred in each conclusion of law, and, in support of this contention, insists it was entitled to charge fourteen cents per 100 pounds on the car shipped to Laura, nine cents on three cars, and ten cents on two cars, shipped to Atlanta, ten and one-half cents on the eighteen cars shipped to Greenfield, and fourteen and one-half cents on the car shipped to Wilson. Appellee contends that since Atlanta and Greenfield are intermediate points to Indianapolis measured by the routes over which the cars were transported, under item three heretofore quoted, the six and one-half cents rate for Indianapolis must control, and that the rate to Kersey must be applied to the shipment to Laura, and the rate to Louisville must be applied to the shipment to Wilson.

In passing upon these contentions, we must keep in mind that neither the trial court nor this court has any authority to fix freight rates. The schedule for 1. freight rates was approved by the proper authorities and promulgated as required by law. The only questions for us to determine are what rates appellant under the law and schedule promulgated by it was entitled to exact. Both parties insist that the tariff or schedule of rates on file when the respective shipments were made control.

Clause "c," §12828 Burns 1926, §5544 Burns 1914,

among other things, provides that: "It shall also be unjust discrimination for any carrier subject hereto to charge or receive any greater compensation in the aggregate for the transportation of like kinds of property or passengers for a shorter than for a longer distance *over the same line*, (our italics) in the same direction, the shorter distance being included in the longer: Provided, however, That in cases where two or more carriers have lines between common points in this state, and the line of one of such carriers is shorter than the other, then the carrier having the longer line between any two such common points may meet the rates between such common points which are established by the route having the shorter line: Provided, There is bona fide and actual competition between such two routes for the business between such common points: Provided, further, That upon application to the commission, it may, for the purpose of preventing manifest injury, authorize any such carrier to charge less for longer than for shorter distances for transporting persons and property."

Appellee, in applying its contention to the shipments to Greenfield, says that since Greenfield is an intermediate point between Summitville and Indianapolis, via Richmond, appellant is not entitled to receive any greater compensation for the cars shipped to Greenfield than it would have been entitled to receive if the cars had been shipped to Indianapolis. By this contention, appellee seeks to apply the provision in clause "c" just quoted, against receiving greater compensation for a shorter than for a longer distance. We do not think this provision is applicable to the facts in the instant case. That statute has reference to cases of shipments made over a direct and ordinary route. To illustrate: Appellant has a direct line passing through Summitville and Alexandria to Indianapolis. Law-

rence is an intermediate point on this line about eight miles from Indianapolis. It would be unjust and unlawful for appellant to charge a greater rate on a shipment from Summitville to Lawrence than for a shipment to Indianapolis. Lawrence and Indianapolis would, in the words of the law, be on the "same line." Greenfield, however, is not on appellant's line. Suppose appellant had a line running from Anderson to Knightstown and there connecting with the Pennsylvania. The distance from Summitville to Knightstown, being less than the distance to Indianapolis, the freight rate would naturally be less than it would be to Indianapolis. By referring to the tariff, we find that the rate on a carload of tile from Summitville to Knightstown is four and one-half cents per 100 pounds. Suppose also that there were no switching connections between the two roads at Knightstown and that the eighteen cars which were shipped to Greenfield had, in part, at least, been routed through Indianapolis, would it be reasonable to contend that the four and one-half cents rate would apply? If so, why would it not apply to any point between Summitville and Greenfield, including Indianapolis? The statute must receive a reasonable construction. The distance from Summitville to Greenfield, via Richmond, is 133 miles, while the distance, via Indianapolis, is about seventy-five miles, and we have no doubt but that the ten and one-half cents rate to Greenfield would have been legal if the shipments had been made through Indianapolis. And we hold that appellant was entitled to charge ten and one-half cents per 100 pounds on the shipments to Greenfield. And, for like reasons, we hold that the nine cents and ten cents charges on the shipments to Atlanta were legal and proper.

In so far as the shipments to Laura and Wilson are concerned, the facts are quite different. No specific

rate is named in the tariff on shipments to Wilson. The next station beyond is Louisville. Item one of the tariff controls in this instance and the trial court correctly held that the legal rate to Wilson was ten and one-half cents.

The shipment to Laura was carried over appellant's line to Indianapolis and from there to the point of destination over the Monon. The rate to Laura named in the tariff is fourteen cents, while the rate to Kersey on the same line and eight miles beyond Laura is nine cents. Under the facts as found, we hold that item 3 of the schedule of rates applies and that the trial court correctly applied the nine cents rate to this shipment.

Judgment reversed, with directions to the trial court to restate its conclusions of law in accordance with this opinion and to render judgment accordingly.